2019 IL App (1st) 190144-U

THIRD DIVISION
April 29, 2020

No. 1-19-0144

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE *ex rel.* KIMBERLY M. FOXX, State's Attorney of Cook County, Illinois, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | |
| $498 U.S.C.; $7000 U.S.C.; and $6130 U.S.C., | ) ) ) | No. 2017 COFO 002369 |
| Defendant, | ) ) | |
| (Sonya Burton, | ) ) | Honorable Paul Karkula, |
| Claimant-Appellant). | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Justices Howse and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*:   This court lacks jurisdiction because claimant's notice of appeal was untimely.

¶ 2    Claimant, Sonya Burton, appeals *pro se* from the trial court's order of forfeiture for three bundles of United States currency following a bench trial. On appeal, claimant argues that the trial court erred in failing to return the subject currency to her because the confiscated money

was not subject to forfeiture and the trial court wrongly believed that she lied on her fee waiver application.

¶ 3   In July 2017, plaintiff, the People of the State of Illinois *ex rel*. Kimberly Foxx, filed a complaint for forfeiture in the trial court. The complaint alleged that on or about May 16, 2017, law enforcement officers from the Chicago police department executed a search warrant at an apartment located at 7007 South Sangamon Avenue in Chicago. The target of the search warrant was Shawn Burton, claimant's son. The search recovered an assault rifle, two 30-round magazines, two 50-round magazines, one drum containing 16 live rounds, multiple bags of suspected cannabis, three bundles of a large amount of cash, various live rounds, narcotics packaging, and a digital scale. The total amount of cannabis recovered was 1580 grams with an estimated street value of $25,280. The cash recovered from the apartment was packaged in small rubber banded bundles, consisting of mostly small denominations. The money bundles totaled $498, $7000, and $6130 in United States currency. The police canine indicated positive for the odor of narcotics on the recovered currency. Shawn Burton has two prior felony narcotic convictions, and in April 2017, he pled guilty to an amended charge of possession of cannabis with a sentence of 317 days in the Cook County Department of Corrections. The complaint stated that based on the officers' training and experience, the money recovered was consistent with narcotics trafficking.

¶ 4   The complaint further alleged that the money, totaling $13,628, was subject to forfeiture under section 7 of the Drug Asset Forfeiture Procedure Act (725 ILCS 150/7 (West 2016)) because the money was recovered in close proximity to forfeitable substances, forfeitable drug manufacturing or distributing paraphernalia, or forfeitable records of the importation, manufacture or distribution of substances and the currency "was used or was intended to be used

to facilitate the violation of Controlled Substance Act and/or the Cannabis Control Act and/or Methamphetamine Control and Community Protection Act and/or violations pertaining to the offense of Money Laundering." The currency was under the control of the Illinois State Police and subject to forfeiture. According to the complaint, a notice of pending forfeiture was sent to claimant on July 7, 2017.

¶ 5    The State attached claimant's verified claim, filed July 11, 2017, to the complaint. The verified claim stated that she was the sole and rightful owner of the currency. She acquired the currency in periodic installments approximately every two weeks and every month from approximately 2011 to 2016. She received approximately $6000 from her daughter Keyonna Walton-Sims, $6000 from her former employer Alden Princeton Nursing Home, and $1628 from her next employer University of Chicago Hospital. Claimant and her daughter were saving money to move from their current apartment. Claimant asserted that the currency was not subject to forfeiture because it was unrelated to criminal activity under the Criminal Code of 2012 (720 ILCS 5/1 *et seq.* (West 2016)) and "was derived completely from legitimate sources, was used for completely legitimate purposes, and was not used in any illegal manner." Claimant stated that she had bank statements, copies of money orders, copies of pay stubs, and other documentation to prove that she was the rightful owner of the property.

¶ 6    Claimant also filed an application for waiver of court fees. On the form, claimant stated that her income was $2000 per month from her employment and that she did not support any adults in her home. She also did not list any money she received from people she supported who lived with her. The trial court granted claimant's fee waiver on July 14, 2017.

¶ 7    Claimant's verified claim stood as her verified answer to the forfeiture complaint and the matter was continued numerous times over the next year. A bench trial was held before Judge Paul Karkula on November 29, 2018. We note that neither a report of proceedings nor a

3

bystander's report from the trial was included in the record on appeal. A judgment order was entered on November 29, 2018, and held that the property was used in the commission of a criminal offense while in possession and control of Shawn Burton. The currency was adjudged forfeited in accordance with the Cannabis Control Act (720 ILCS 550/12 (West 2016)). The order of forfeiture terminated "any and all right, title or interest of each and everyone of those persons or parties claiming an interest" in the subject property, $498 U.S.C., $7000 U.S.C., and $6130 U.S.C.

¶ 8     On December 5, 2018, claimant filed a new application for waiver of court fees and stated that she supported one adult who lived with her. She indicated that she received $800 per month from her employment and $750 per month from another person's employment, for a total of $1500 per month. The trial court granted the fee waiver.

¶ 9     Also on that day, claimant filed a *pro se* motion to reconsider the judgment. She wrote,

> "I was told by my attorney to put my income down and I included the three hundred dollars that I was getting from my daughter and to be honest I really didn't know exactly how to answer the question because support is buying clothes shoe [*sic*] etc. and she buys her own clothes I'm really tired of being treated like a criminal because of something my son did I work hard for everything I have I don't drug deal or nothing I'm a hard working single parent [*Sic*.]"

¶ 10     On December 10, 2018, claimant filed a *pro se* motion for substitution of judge, stating that she wanted her case heard by a different judge because "the original judge can't separate my son crimes [*sic*] from my case he's one sided." Judge James Carroll entered and continued the case. According to the case summary in the record, on December 13, 2018, the case was set for a hearing before Judge Carroll. In the same entry as the hearing, the case summary lists under the

minutes that a motion for reconsideration was denied. However, this clearly appears to be a clerical error because the motion for reconsideration was not heard by Judge Carroll, but in fact, the motion for reconsideration was heard and denied on December 13, 2018, by Judge Karkula, who presided over the trial. No order entered by Judge Carroll appears in the record from December 13, 2018, but based on the record, we presume that the entry under the hearing should have stated that Judge Carroll denied the motion for substitution of judge, prior to Judge Karkula's denial of the motion for reconsideration.

¶ 11    Also on December 13, 2018, claimant again filed a *pro se* motion asking to have her case heard by a different judge. She repeated her argument for a substitution of judge and claimed a conflict of interest because the trial judge had found that claimant had lied on her fee waiver. On January 16, 2019, claimant withdrew her motion for substitution of judge, filed December 13, 2018. Claimant also filed her notice of appeal on January 16, 2019.

¶ 12    On appeal, claimant argues that the trial court erred in entering the forfeiture order because the court wrongly believed that she lied on her fee waiver and rejected her claim to the money. However, the State asserts that this court lacks jurisdiction for this appeal because claimant's notice of appeal was untimely. Claimant does not respond to this argument in her reply brief.

¶ 13    "It is a well-established proposition that jurisdiction only arises in the appellate court when a party timely files a notice of appeal." *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 521 (2001). "The timely filing of a notice of appeal is both jurisdictional and mandatory." *Secura*, 232 Ill. 2d at 213 (citing Ill. S. Ct. R. 301 (eff. Feb. 1, 1994)). "[T]he appellate court does not have the authority to excuse the filing requirements of the supreme court rules governing appeals." *Id*. at 217-18. "Unless there is a properly filed notice of appeal, the appellate court

5

lacks jurisdiction over the matter and is obliged to dismiss the appeal." *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 176 (2011).

¶ 14    We observe that *pro se* litigants, such as claimant, are not entitled to more lenient treatment than attorneys. "In Illinois, parties choosing to represent themselves without a lawyer must comply with the same rules and are held to the same standards as licensed attorneys." *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 78. "*Pro se* litigants are presumed to have full knowledge of applicable court rules and procedures." *Steinbrecher*, 197 Ill. 2d at 528.

¶ 15    Supreme Court Rule 303(a)(1) provides an appeal from a final judgment within 30 days of its entry. Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). If a timely posttrial motion directed against the judgment has been filed, the time for filing a notice of appeal is within 30 days after the entry of the order disposing of the last pending postjudgment motion directed at the judgment. *Id*. If the last day falls on a Saturday, Sunday, or legal holiday, the due date is extended to the following business day. 5 ILCS 70/1.11 (West 2016); *Shatku v. Wal–Mart Stores, Inc.*, 2013 IL App (2d) 120412, ¶ 9.

¶ 16    Under these rules, claimant's notice of appeal was due within 30 days of the entry of the last order disposing of a postjudgment motion directed against the judgment. In this case, claimant filed a motion to reconsider on December 5, 2018, which was denied on December 13, 2018. Claimant also filed a motion for substitution of judge on December 10, 2018, which appears to have been denied on December 13, 2018. She filed a second motion for substitution of judge on December 13, 2018, but withdrew this motion on January 16, 2019. The question before is whether a motion for substitution of judge qualifies as a postjudgment motion directed against the judgment for purposes of Rule 303(a)(1).

¶ 17    "An order is 'final' if it either terminates the litigation between the parties on the merits or disposes of the rights of the parties either on the entire controversy or on a separate and definite part of it." *Bennett v. Chicago Title & Trust Co.*, 404 Ill. App. 3d 1088, 1094 (2010); *Shermach v. Brunory*, 333 Ill. App. 3d 313, 316 (2002). A judgment is final if it determines the litigation on the merits so that if affirmed on appeal, the only thing remaining is to proceed with execution of the judgment. *Shermach*, 333 Ill. App. 3d at 316. An order is final when any matters left for future determination are merely incidental to the ultimate rights that have been adjudicated by the order. *Id.* at 317.

¶ 18    However, "[t]he denial of a motion for substitution of judge for cause is not a final order." *Inland Commercial Property Management, Inc. v. HOB I Holding Corp.*, 2015 IL App (1st) 141051, ¶ 19 (citing *In re Marriage of Nettleton*, 348 Ill. App. 3d 961, 968-69 (2004)). Rather, a motion for substitution of judge is an interlocutory order that is appealable on review from a final order. *Id.*; see also *In re Marriage of Morgan*, 2019 IL App (3d) 180560 ("The denial of a motion for substitution of judge for cause is an interlocutory order and is not final for purposes of appeal").

¶ 19    Since a motion for substitution of judge is not a final order, any order disposing of the motion would not affect the timeframe in which to file a notice of appeal. Further, a motion for substitution of judge is not directed against the judgment, as required by Rule 303. Regardless, in this case, claimant withdrew her second motion for substitution of judge on January 16, 2019, and no order was entered. The last order entered in this case was the denial of claimant's motion to reconsider the judgment on December 13, 2018. Her notice of appeal was due 30 days after the entry of that order, which was January 12, 2019. However, January 12, 2019, fell on a Saturday, and therefore, her notice of appeal was due on the first business day, January 14, 2019.

Since claimant's notice of appeal was filed on January 16, 2019, the notice was untimely. Because this court lacks the authority to excuse a notice of appeal that was not filed within the timeframe of the Rule 303, we do not have jurisdiction to consider claimant's appeal.

¶ 20    Based on the foregoing reasons, claimant's appeal is dismissed for lack of jurisdiction.

¶ 21    Appeal dismissed.